Brian A. Sutherland (SBN 248486)
bsutherland@reedsmith.com
Joshua D. Anderson (SBN 312836)
janderson@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: (415) 543-8700
Facsimile:  (415) 391-8269

Attorneys for Defendant Yelp Inc.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JARON BRIGNAC, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>YELP, INC., a California Corporation, 1-10 INCLUSIVE,<br><br>Defendants. | Case No. 2:18−cv−10721 R (ASx)<br><br>**Memorandum of Law in Support of Yelp Inc.'s Motion to Dismiss under Rule 12(b)(6)**<br><br>Date:     February 19, 2019<br>Time:    10:00 a.m.<br>Place:   Roybal Federal Building and U.S. Courthouse<br>255 East Temple Street,<br>Los Angeles, CA 90012<br>Judge:   Hon. Manuel L. Real<br><br>[filed concurrently with notice of motion and proposed order] |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................2

    A.    The Complaint's Allegations That Yelp Monopolized Google's
Search Results for Certain Keywords ........................................................2

    B.    The Complaint's Allegations That Yelp Refused to Deal with
BPCS LAW ................................................................................................3

    C.    Procedural History ......................................................................................4

ARGUMENT ........................................................................................................4

I.    Brignac Is Not the Real Party in Interest...................................................4

II.    The Complaint Demonstrates that BPCS LAW and Brignac Have No
Antitrust Claim against Yelp .....................................................................5

    A.    The Complaint Fails to Allege a Relevant Market in Which
Yelp Held Monopoly Power .......................................................................6

    B.    The Complaint Fails to Allege That Yelp Engaged in
Anticompetitive Conduct ...........................................................................8

        1.    The Communications Decency Act Bars Any Claim That
Yelp's Publication of Third-Party Reviews Constitutes
Anticompetitive Conduct    8

        2.    Google's Decision to List Yelp in Its Search Results Is
Not Anticompetitive Conduct by Yelp    10

        3.    BPCS LAW and Yelp Are Not Competitors and
Charging a Fee for Advertising Is Not Anticompetitive
Conduct    10

        4.    The Essential Facilities Doctrine Does Not and Could
Not Apply in This Case    11

    C.    The Complaint Fails to Allege Antitrust Injury....................................12

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– i –

# TABLE OF CONTENTS
## (Cont.)

**Page**

III.     This Court Should Dismiss the Complaint with Prejudice ............................... 14

CONCLUSION ........................................................................................................... 15

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– ii –

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
   836 F.3d 1171 (9th Cir. 2016) ........................................................................ 11, 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................... 5

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983) .......................................................................................... 12

*Baldino's Lock & Key Serv., Inc. v. Google LLC*,
   285 F. Supp. 3d 276 (D.D.C. 2018) .................................................................. 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 10

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
   182 F.3d 1096 (9th Cir. 1999) .......................................................................... 6

*DeSoto v. Yellow Freight Sys., Inc.*,
   957 F.2d 655 (9th Cir. 1992) ............................................................................ 14

*Gottlieb v. Alphabet Inc.*,
   No. 5:17-cv-06860, 2018 WL 2010976 (N.D. Cal. Apr. 30, 2018) .................. 4, 5

*Hicks v. PGA Tour, Inc.*,
   897 F.3d 1109 (9th Cir. 2018) .......................................................................... 6

*Jurin v. Google Inc.*,
   695 F. Supp. 2d 1117 (E.D. Cal. 2010) ............................................................ 9

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) .............................................................. 9, 10, 13, 14

*Kwan v. Sanmedica Int'l*,
   854 F.3d 1088 (9th Cir. 2017) .......................................................................... 5

*Levitt v. Yelp! Inc.*,
   No. No. C-10-1321, 2011 WL 5079526 (N.D. Cal. Oct. 26, 2011) .................. 9, 14

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

MEMORANDUM OF LAW
IN SUPPORT OF YELP INC.'S MOTION TO DISMISS UNDER RULE 12(b)(6)

# TABLE OF AUTHORITIES
## (Cont.)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**Page**

*MetroNet Servs. Corp. v. Qwest Corp.*,
   383 F.3d 1124 (9th Cir. 2004) ................................................................ 12

*In re Nat'l Football Leagues Sunday Ticket Antitrust Litig.*,
   No. ML 15-02668, 2017 WL 3084276 (C.D. Cal. June 30, 2017) ........................ 14

*nSight, Inc. v. PeopleSoft, Inc.*,
   296 F. App'x 555 (9th Cir. 2008) .............................................................. 7

*Oltz v. St. Peter's Cmty. Hosp.*,
   861 F.2d 1440 (9th Cir. 1988) ................................................................. 6

*Paladin Assocs., Inc. v. Montana Power Co.*,
   328 F.3d 1145 (9th Cir. 2003) ................................................................ 13

*Reddy v. Litton Indus., Inc.*,
   912 F.2d 291 (9th Cir. 1990) .................................................................. 14

*Rick-Mik Enters. Inc. v. Equilon Enters., LLC*,
   532 F.3d 963 (9th Cir. 2008) ................................................................... 7

*Rowland v. California Men's Colony, Unit II Men's Advisory Council*,
   506 U.S. 194 (1993) ............................................................................. 5

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
   144 F. Supp. 3d 1088 (N.D. Cal. 2015) ....................................................... 9

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ........................................................ 5, 12, 13

*Tanaka v. Univ. of S. Calif.*,
   252 F.3d 1059 (9th Cir. 2001) ................................................................. 6

*U-Haul Int'l, Inc. v. Jartran, Inc.*,
   793 F.2d 1034 (9th Cir. 1986) ................................................................. 4

*United States v. Colgate & Co.*,
   250 U.S. 300 (1919) ............................................................................ 11

– iv –

# TABLE OF AUTHORITIES
## (Cont.)

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

**Page**

*Vacchiano v. Wessell,*
    No. CV 12-2003, 2014 WL 1225301 (C.D. Cal. Mar. 24, 2014) ............................ 4

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP,*
    540 U.S. 398 (2004).......................................................................................... 8, 11

*Vinci v. Waste Mgmt., Inc.,*
    80 F.3d 1372 (9th Cir. 1996) .............................................................................. 4, 5

*Wardrop v. Wells Fargo Bank,*
    No. ED CV 16-413, 2016 WL 7626145 (C.D. Cal. Oct. 11, 2016)....................... 14

*Zeran v. America Online, Inc.,*
    129 F.3d 327 (4th Cir. 1997) ................................................................................... 9

**Statutes**

15 U.S.C. § 2..................................................................................................... 1, 10

15 U.S.C. § 15 ........................................................................................................ 12

47 U.S.C. § 230 ........................................................................................................ 8

47 U.S.C. § 230(b)(1)-(2) ......................................................................................... 8

47 U.S.C. § 230(c)(1)................................................................................................ 9

**Rules**

Fed. R. Civ. P. 17(a) ................................................................................................. 4

# INTRODUCTION

Plaintiff pro se Jaron Brignac owns a legal services corporation, "BPCS LAW." Like many business owners, he wants consumers who are looking for a product or service to find his business when they use search engines to shop online. Brignac apparently entered certain keywords into Google's search engine and did not like the outcome: His business did not appear on Google's first page of search results. He then sued defendant Yelp Inc. ("Yelp").

Yelp operates a website and mobile applications that allows consumers—free of charge—to search for local businesses such as BPCS LAW, and read and write reviews (and provide and view other information) about them. Brignac complains that Yelp's web pages appear on the first page of Google's search results for certain keywords instead of BPCS LAW's web pages. But as should be readily apparent, Brignac cannot fault Yelp—under any conceivable legal theory—for Google's search results and web pages, which Google controls.

Brignac brings his ill-conceived action against Yelp under the Sherman Act, 15 U.S.C. § 2. The Court should dismiss the complaint for many reasons. First, the complaint shows that he is not the real party in interest because BPCS LAW (not Brignac) is the entity that allegedly did not appear in search results. Second, the complaint shows that Yelp does not have a monopoly in any relevant market. To the contrary, the complaint alleges that Google dominates the market for online searches. Third, the Communications Decency Act bars any attempt to impose liability on Yelp for publishing third-party reviews and, in any event, Yelp did not engage in anticompetitive conduct by allowing Google to index its web pages for later display in Google's search results. Fourth, the complaint does not and could not allege that Yelp caused BPCS LAW (or Brignac) to sustain an antitrust injury.

Brignac cannot fix these fatal defects in his pleading because doing so would require him to contradict allegations he has already made. But the law does not permit a plaintiff to file one pleading and then file another that contradicts the allegations of

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

the first. Accordingly, granting leave to amend would be futile and this Court should dismiss Brignac's complaint with prejudice.

## BACKGROUND

**A.      The Complaint's Allegations That Yelp Monopolized Google's Search Results for Certain Keywords**

Plaintiff is the sole business owner of BPCS LAW, which is a "Corporation providing legal services for law firms and attorneys." Compl. ¶¶ 5, 6. BPCS LAW has an "online presence" and does "business online." Compl. ¶¶ 6, 7. As the complaint explains, BPCS LAW wants consumers to find it online by searching for keywords such as "eviction attorneys," "foreclosure defense attorneys," and "family law attorneys." Compl. ¶ 6; *see also* Compl. ¶¶ 13-14, 21.

According to the complaint, a business that appears in online search results generated by websites such as Google and Yelp will attract a greater or lesser number of customers depending on where the business "ranks" in the results. *See* Compl. ¶ 12. Users are more likely to click on links in search results that appear on the "first page" of Google's search results and correspondingly more likely to purchase products or services from a business to which the link directs the user. Compl. ¶ 12. Likewise, businesses that have a low "ranking" on Google will receive less web traffic and sell fewer products or services to users. Compl. ¶ 12.

Because a high "ranking" in search results for certain keywords helps to drive a business's sales, the complaint alleges, a business may employ "Search Engine Optimization" ("SEO") techniques to improve its ranking for those keywords. Compl. ¶¶ 6, 12, 13. A business may endeavor to optimize its website for a particular search engine on its own, as BPCS LAW apparently does (Comp. ¶ 6), or it may hire an SEO company to carry out that activity. The complaint alleges that "SEO has become a huge market amongst businesses competing to get their business ranked higher on GOOGLE" and "billions of dollars are paid out to SEO companies to keep businesses ranking on the first page in their local communities." Compl. ¶¶ 12-13.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Brignac asserts that Yelp "created a monopoly in the SEO market and a monopoly on [Google's] first page ranking." Compl. ¶ 14. The complaint does *not* allege, however, that Yelp is one of the "SEO companies" that helps businesses to get "ranked higher on GOOGLE." Compl. ¶¶ 12, 13. Nor does it plausibly allege that Yelp has any control over Google's proprietary algorithm, which ranks search results. Compl. ¶ 13. Rather, the gist of Brignac's "monopoly" complaint is that Google's website ranks Yelp's web pages higher than BPCS LAW's web pages for certain keywords. Compl. ¶¶ 14, 21. The complaint alleges that "whenever a consumer searches for the keywords "eviction attorney" or "landlord tenant attorney" on Google, "YELP appears not only on the first page of GOOGLE for that keyword, but also ranks three consecutive times on that same first page[,] which pushes other competing businesses such as Plaintiff's business down in rank or to the second page for that keyword …." Compl. ¶ 14. The complaint alleges that Yelp's "monopoly on GOOGLE search" caused "Plaintiff to lose out in an enormous amount of sales." Compl. ¶¶ 15, 21.

**B.   The Complaint's Allegations That Yelp Refused to Deal with BPCS LAW**

The complaint further alleges that Yelp's website uses a "different algorithm than GOOGLE" to determine how to display search results in response to certain keywords. According to the complaint, Yelp's "algorithm … is based on user reviews … made by consumers who have a YELP account …." Compl. ¶ 15. The complaint alleges that Yelp's algorithm based on user reviews caused BPCS LAW "to lose ranking on YELP." Compl. ¶¶ 15, 21. Yelp allegedly "offered to rank Plaintiff's business on the top of [Yelp's] first page in exchange for paying a monthly fee of $1,200 for paid ads." Compl. ¶ 15. The complaint alleges that this amount was "unreasonable" and constituted a refusal "to deal with Plaintiff as a competitor business." Compl. ¶¶ 22, 23.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM OF LAW
IN SUPPORT OF YELP INC.'S MOTION TO DISMISS UNDER RULE 12(b)(6)

## C.      Procedural History

Plaintiff filed his complaint in the Superior Court for the County of Los Angeles on November 19, 2018, and served the complaint on Yelp on November 30, 2018. Yelp timely removed the case to this Court on December 28, 2018. (ECF No. 1) The parties thereafter stipulated to extend Yelp's time to respond to the initial complaint by not more than 30 days, to January 18, 2019. (ECF No. 4)

ARGUMENT

## I.      Brignac Is Not the Real Party in Interest

"An action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a); *see U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1039 (9th Cir. 1986). Thus, the individual owner of a corporation cannot bring suit in his own name if the corporation is the real party in interest. *See Vacchiano v. Wessell*, No. CV 12-2003, 2014 WL 1225301, at *3-5 (C.D. Cal. Mar. 24, 2014) (dismissing complaint under Rule 17(a)); *Gottlieb v. Alphabet Inc.*, No. 5:17-cv-06860, 2018 WL 2010976, at *6 (N.D. Cal. Apr. 30, 2018) (same). And Brignac cannot assert individual claims based on purported injury to the California corporation he allegedly owns, BPCS LAW, because "[a] shareholder of a corporation injured by antitrust violations has no standing to sue in his or her own name ...." *Vinci v. Waste Mgmt., Inc.*, 80 F.3d 1372, 1375 (9th Cir. 1996) (quotation marks omitted) (affirming Rule 12(b)(6) dismissal).

The complaint alleges that "Plaintiff's business" sustained the purported antitrust injury in this case. Compl. ¶¶ 14, 15, 21, 22. As noted, "Plaintiff's business" is "BPCS LAW," which is a "*Corporation* providing legal services for law firms and attorneys." Compl. ¶¶ 5, 6 (emphasis added). The purported injury alleged in the complaint is that Yelp somehow pushed "*Plaintiff's business* [*i.e.*, BPCS LAW] down in rank" on Google's search results. Compl. ¶¶ 14, 21 (emphasis added). The complaint further alleges that Yelp "offered and continues to offer [to] place *Plaintiff's business* in its first page ranking in exchange for Plaintiff paying an unreasonable amount of money on a monthly basis." Compl. ¶ 22 (emphasis added).

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 4 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  The complaint summarizes: "Thus, YELP is refusing to deal with Plaintiff as a

2  *competitor business*." Compl. ¶ 22 (emphasis added). These allegations make clear

3  that the "Corporation" (BPCS LAW) sustained any purported injury in this case such

4  that Brignac's alleged injuries would be only derivative of the alleged corporate

5  injury. As a result, he is not real party and interest and this Court should dismiss his

6  claims. *See Vinci*, 80 F.3d at 1375.

7       Brignac could not amend his complaint to substitute or add BPCS LAW as a

8  party, at least not without first retaining an attorney. "It has been the law for the better

9  part of two centuries … that a corporation may appear in the federal courts only

10  through licensed counsel." *Rowland v. California Men's Colony, Unit II Men's*

11  *Advisory Council*, 506 U.S. 194, 201-02 (1993). Nor can he circumvent this rule by

12  assigning BPCS LAW's claims to himself. *See Gottlieb*, 2018 WL 2010976, at *4-5.

13  In any event, neither BPCS LAW nor Brignac can state a claim against Yelp, as

14  demonstrated below.

15  **II.     The Complaint Demonstrates that BPCS LAW and Brignac Have No**

16          **Antitrust Claim against Yelp**

17       To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege

18  plausible facts showing that the pleader is entitled to relief. *See Ashcroft v. Iqbal*, 556

19  U.S. 662, 677-79 (2009). Dismissal may be based on the "lack of a cognizable legal

20  theory or the absence of sufficient facts alleged under a cognizable legal theory."

21  *Kwan v. Sanmedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017) (quotation marks

22  omitted). Here, the facts alleged establish that BPCS LAW and Brignac lack a

23  cognizable legal claim against Yelp.

24       To plead a cognizable monopolization claim under the Sherman Act, a plaintiff

25  must allege (1) the possession of monopoly power in the relevant market; (2) the

26  willful acquisition or maintenance of that power, *i.e.*, anticompetitive conduct; and

27  (3) causal antitrust injury. *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013).

28

Brignac cannot allege any of these elements. Therefore, the Court should dismiss his complaint with prejudice.

**A.      The Complaint Fails to Allege a Relevant Market in Which Yelp Held Monopoly Power**

"Plaintiffs must plead a relevant market to state an antitrust claim under the Sherman Act, unless they assert a per se claim." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018). Brignac does not assert a "per se" violation of the antitrust laws (such as horizontal price fixing) and therefore he must plead a relevant market. "The relevant market must include both a geographic market and a product market." *Id.* The geographic market is the "area of effective competition ... where buyers can turn for alternate sources of supply." *Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1446 (9th Cir. 1988) (quotation marks omitted); *see also Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir. 1999). The product market "must encompass the product at issue as well as all economic substitutes for the product." *Hicks*, 897 F.3d at 1120. If the alleged product market does not include substitute products, it is not a valid market. *See id.* at 1123.

Plaintiff alleges that Yelp's "relevant product/service market is a national website and platform that displays user-generated content" and "a national advertising platform for business owners and individuals operating as a search engine for online users ...." Compl. ¶ 17. The complaint appears to allege that Yelp's product is "paid ads," which it sells to corporations such as BPCS LAW. Compl. ¶¶ 15, 21. It does not identify any other product or service that Yelp sells. The complaint fails to allege a relevant market because it does not identify any substitutes for Yelp's alleged "paid ads" product. And without including economic substitutes, the court cannot evaluate whether Yelp has monopoly power in the proposed "national" market. *See Hicks*, 897 F.3d at 1123; *see also, e.g.*, *Tanaka v. Univ. of S. Calif.*, 252 F.3d 1059, 1063 (9th Cir. 2001) ("Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim.").

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

The complaint also alleges that Yelp "acquired a powerful exclusive possession and control of the organic and paid SEO market and a powerful and exclusive possession and control on [Google's] first page ranking …" Compl. ¶ 10; *see also* Compl. ¶¶ 19, 21. It alleges that Yelp's web pages appear on Google's first page of search results instead of BPCS LAW's web pages. Compl. ¶¶ 14, 21. But the complaint does *not* allege that Yelp sells a service in which it offers to improve a business's "ranking" *on Google* in connection with certain keywords, much less does it identify substitutes for such a service provided by other SEO companies. Rather, it shows that *Google* has decided (through its proprietary algorithm) to list Yelp in one position in Google's search results and to list BPCS LAW in another. Compl. ¶¶ 11-13. But Google's proprietary search algorithm is not a cognizable "market."

Even if Brignac had alleged a relevant market (and he has not), the complaint would still fail to state a claim because it does not allege that Yelp has monopoly power in any market. "A failure to allege power in the relevant market is a sufficient ground to dismiss an antitrust complaint." *Rick-Mik Enters. Inc. v. Equilon Enters., LLC*, 532 F.3d 963, 972 (9th Cir. 2008); *see also nSight, Inc. v. PeopleSoft, Inc.*, 296 F. App'x 555, 558 (9th Cir. 2008) (same). The complaint acknowledges that Google, not Yelp, determines search result rankings through Google's own algorithm, belying the assertion that Yelp exercises control over Google's search results. *See* Compl. ¶ 13 ("[A] business [can] place a ranking between 1-5 on the first page if it diligently meets the criteria of [Google's] algorithm.")). The complaint further demonstrates that Yelp does *not* have power over Google's search results because it alleges that businesses can pay Google for "paid ads" on Google's website. Compl. ¶ 13. Finally, the complaint alleges that Google "dominates more than 90% of the search engine market online" (Compl. ¶ 11), defeating any claim that Yelp has monopoly power over the market for "paid ads" on search engine websites.

Because the complaint fails to allege that Yelp has monopoly power in any relevant market, this Court should dismiss the complaint.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**B.     The Complaint Fails to Allege That Yelp Engaged in Anticompetitive Conduct**

Even if Yelp had monopoly power in a relevant market (it does not), the complaint would still fail to state claim. "The mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it is an important element of the free-market system." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). "To safeguard the incentive to innovate, the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*." *Id.* (emphasis in original).

**1.     The Communications Decency Act Bars Any Claim That Yelp's Publication of Third-Party Reviews Constitutes Anticompetitive Conduct**

The complaint alleges that Yelp's "algorithm" somehow "forces business owners to engage YELP for advertising and force the business owner, such as Plaintiff [to] follow YELP's algorithm …" Compl. ¶ 21. It further alleges that Yelp bases its algorithm "on the user reviews on YELP to determine the business owner ranking, and requires those user reviews to [solely] be reviews made by consumers who have a [Yelp] account and use [Yelp] regularly, which resulted in business owner such as Plaintiff for BPCS LAW /dba BPCS LAW EVICTIONS to lose ranking on YELP." Compl. ¶ 21. To the extent that Brignac contends that Yelp engaged in anticompetitive conduct by publishing third-party reviews from account holders, that contention would not only fail to state an antitrust claim but also would be barred by the Communications Decency Act ("CDA"), 47 U.S.C. § 230.

Congress enacted the CDA "to promote the continued development of the Internet and other interactive computer services," and "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. § 230(b)(1)-(2). To that end, the statute provides that "[n]o provider or user of an interactive

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 8 –

computer service shall be treated as the publisher or speaker of any information provided by another information content provider." *Id.* § 230(c)(1). Thus, a defendant has no liability under federal or state law if it is a provider of an interactive computer service and the plaintiff's claim seeks to impose liability based on the defendant's publication of third-party information. *See, e.g.*, *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1092 (N.D. Cal. 2015) (dismissing federal discrimination claim with prejudice under CDA); *Baldino's Lock & Key Serv., Inc. v. Google LLC*, 285 F. Supp. 3d 276, 278, 280 n.2, 284 (D.D.C. 2018) (dismissing federal antitrust claim with prejudice under the CDA).

"Yelp is plainly a provider of an 'interactive computer service'" under the statute. *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016). And Brignac's claim that BPCS LAW "los[t] ranking" because Yelp publishes only reviews from users who maintain accounts falls squarely within the scope of the Act's rule against imposing liability on websites based on their role as publishers. A website may exercise control over *which* third-party content it publishes and may not be held liable for those editorial decisions. *See Levitt v. Yelp! Inc.*, No. No. C-10-1321, 2011 WL 5079526, at *1 (N.D. Cal. Oct. 26, 2011) (finding Yelp's publishing decisions to be protected editorial activities under § 230); *Jurin v. Google Inc.*, 695 F. Supp. 2d 1117, 1120 (E.D. Cal. 2010) (applying CDA and dismissing claims that Google's conduct improperly caused "[Plaintiff's] competitors' names [to] appear in a position higher than Plaintiff's business on a results page"); *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) ("lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred").

Further, Brignac cannot circumvent CDA immunity by alleging that Yelp's web pages appeared in Google's search results. The Ninth Circuit has already rejected attempts to use precisely this kind of "downstream distribution" of Yelp reviews to

avoid CDA immunity. *Kimzey*, 836 F.3d at 1270. As *Kimzey* held, "Yelp is not liable for disseminating [third-party] content … to a search engine." *Id.*

### 2. Google's Decision to List Yelp in Its Search Results Is Not Anticompetitive Conduct by Yelp

The Ninth Circuit's decision in *Kimzey* also held that a plaintiff does not state a claim of *any* kind by alleging that Yelp allowed Google to index its web pages. If Brignac means to allege that Yelp should be held liable because Google indexed Yelp's web pages and included them in its search results, "then [his] claims fail because he pled *no* plausible theory of liability for Yelp stemming from Google's actions." *Kimzey*, 836 F.3d at 1270 n.5 (emphasis added). Brignac's allegation that Yelp's web pages appeared three times on the first page of Google's search results for the search terms "eviction attorney" or "landlord tenant attorney" cannot not support *any* claim, much less can it support a claim under the Sherman Act, 15 U.S.C. § 2.

Designing and building a successful website that appears in search engine results is not anticompetitive. As the complaint alleges, many businesses strive to do so. Compl. ¶¶ 12-13. Thus, Yelp's alleged responsiveness to Brignac's search terms is entirely consistent with legitimate business activity. And a Sherman Act claim may not proceed on allegations of conduct that are "just as much in line with a wide swath of rational and competitive business strategy" as with monopolization. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). In any event, as the complaint alleges, Google controls its own search engine results and web page content through its "algorithm" and placement of "paid ads." Compl. ¶ 13. Google's activities obviously cannot constitute anticompetitive conduct by Yelp. *Kimzey*, 836 F.3d at 1270 n.5.

### 3. BPCS LAW and Yelp Are Not Competitors and Charging a Fee for Advertising Is Not Anticompetitive Conduct

After alleging that Yelp somehow monopolized Google's search results for certain keyword searches, the complaint adds an assertion that Yelp refused to sell advertising to BPCS LAW at a reasonable price. It alleges that "Yelp is refusing to

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 10 –

deal with Plaintiff as a competitor business" and that a "firm's unilateral refusal to deal with its rivals can give rise to antitrust liability." Compl. ¶¶ 22, 23. But the complaint shows that BPCS LAW and Yelp are neither "competitors" nor "rivals" in any relevant market. Far from being competitors, they take opposite sides of a typical transaction: BPCS LAW is a buyer and Yelp is a seller of "paid ads." Compl. ¶ 15.

Even if BPCS LAW (or Brignac) and Yelp somehow could be deemed competitors, that would not matter here because, "as a general matter, the Sherman Act 'does not restrict the long recognized right of [a] trader . . . engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal.'" *Verizon*, 540 U.S. at 408 (quoting *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)). A business could have an antitrust duty to deal with a competitor only when "the only conceivable rationale or purpose" for refusing to deal is "to sacrifice short-term benefits in order to obtain higher profits in the long run from the exclusion of competition." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1184 (9th Cir. 2016) (quotation marks omitted).

Here, BPCS LAW and its owner "simply did not like the business terms offered by [Yelp]." *Id.* Nothing in the complaint remotely suggests that Yelp charged "$1,200 for paid ads" to exclude BPCS LAW from competing with it in the business of offering ads on websites that provide a forum for consumer reviews. Nor would such an allegation make any sense, given that the complaint alleges that BPCS LAW wants to *appear* in search results, not sell ads. Compl. ¶¶ 12-15.

### 4. The Essential Facilities Doctrine Does Not and Could Not Apply in This Case

The complaint contains a reference to the "essential facilities doctrine" in a subheading between paragraphs 21 and 22 of the complaint. The essential facilities doctrine is a variant of a refusal to deal claim. *Aerotec Int'l*, 836 F.3d at 1184-85. To plead a claim under this doctrine, Brignac must allege that (1) Yelp is a monopolist in control of an essential facility that is critical to competition; (2) Brignac, as a

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

competitor, cannot duplicate the facility; (3) Yelp refuses to provide Brignac access to the facility; and (4) it is feasible to provide such access. *Id.* at 1185. Brignac cannot allege any of these elements.

The complaint shows that Yelp is *not* in control of Google's "facilities" or search algorithm. Compl. ¶ 13. Google "dominates" the search market and controls its search engine results, not Yelp. Compl. ¶ 11. In any event, Brignac *does* have "access" to both Google and Yelp (Compl. ¶¶ 13, 15), foreclosing any claim. *See MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1129 (9th Cir. 2004) ("where access exists, the doctrine serves no purpose" (quotation marks omitted)). The complaint's allegations also defeat any argument that Yelp's website is an "essential facility" for antitrust purposes. Brignac may still advertise "Plaintiff's business" on Google or hundreds of others websites, either through keyword optimization or by paying advertising fees. *See* Compl. ¶ 13. Accordingly, he cannot state a claim under the "essential facilities doctrine." *See Aerotec*, 836 F.3d at 1185 (rejecting "essential facilities" claim in light of alternative suppliers).

## C.   The Complaint Fails to Allege Antitrust Injury

Federal statutory law limits the class of persons who may bring a private right of action for violation of the Sherman Act to those who have been "injured in [their] business or property by reason of anything forbidden in the antitrust laws." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 529 (1983) (quoting 15 U.S.C. § 15). "[C]ausal antitrust injury is a substantive element of an anti-trust claim, and the fact of injury or damage must be alleged at the pleading stage." *Somers*, 729 F.3d at 963.

An antitrust injury consists of: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Id.* (quotation marks omitted). In addition, "the party alleging the injury must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violator in the restrained

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   market." *Id.* (quotation marks omitted). If the alleged injury stems from conduct that is

2   either beneficial to competition or neutral, it is not an antitrust injury. *Paladin Assocs.,*

3   *Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).

4         Plaintiff's first claimed injury is that BPCS LAW appears three spaces lower in

5   Google's search results because Yelp somehow "pushes other competing businesses

6   such as Plaintiff's business down in rank …" Compl. ¶ 21. As noted, this allegation

7   does not allege direct injury to *Brignac*. Moreover, the complaint shows that Google's

8   search results depend on "diligently meet[ing] the criteria of Google's algorithm" and

9   purchasing ads from Google (Compl. ¶ 13), not anticompetitive conduct. Thus, to the

10  extent that Yelp's web pages allegedly appear in Google's search results for certain

11  keywords, the complaint shows they do so as a result of Yelp's "superior skill,

12  foresight, and industry" in diligently meeting Google's criteria. *Paladin*, 328 F.3d at

13  1158. Brignac's claim that BPCS LAW would have made more money if it had a

14  better Google ranking (Compl. ¶ 21) does not allege an *antitrust* injury because

15  Google's rankings are not the result of anticompetitive conduct by Yelp.

16        Plaintiff's second claimed injury is that Yelp "offered to rank Plaintiff's

17  business [BPCS LAW] on top of the first page [of Yelp's own website] in exchange

18  for paying a monthly fee of $1,200 for paid ads." Compl. ¶ 15. Once again, this

19  allegation of purported injury pertains to BPCS LAW, not Brignac. And the complaint

20  contains no allegations whatsoever to support a claim that charging a business $1,200

21  monthly for advertising on a "national advertising platform" (Compl. ¶ 8) is

22  anticompetitive. Any such allegation would be implausible, to say the least.

23        In sum, Brignac is another plaintiff seeking to circumvent Yelp's CDA

24  protection for publishing third-party reviews by way of "creative pleading." *Kimzey*,

25  836 F.3d at 1266 (quotation marks omitted). Brignac owns a legal services firm. He

26  does not compete with Yelp or Google. His complaint about Google's search results

27  has little to do with Yelp and still less to do with any conceivable or plausible

28  anticompetitive conduct. And because he cannot improve on his allegations without

– 13 –

1   contradicting his existing complaint, as demonstrated below, the Court should dismiss
2   his complaint with prejudice.

3   **III.    This Court Should Dismiss the Complaint with Prejudice**

4          This Court should dismiss the complaint against Yelp with prejudice because
5   granting leave to amend "would be futile." *DeSoto v. Yellow Freight Sys., Inc.*, 957
6   F.2d 655, 658 (9th Cir. 1992). Brignac cannot plead around Yelp's CDA immunity for
7   publishing third-party reviews or for allowing Google to include Yelp's web pages in
8   its search results. *See Kimzey*, 836 F.3d at 1270-71 & n.5; *Levitt*, 2011 WL 5079526,
9   at *9 (finding amendment of claims against Yelp to be futile in light of CDA).

10          Moreover, Brignac cannot plead a valid antitrust claim "without contradicting
11   any of the allegations of his original complaint." *Reddy v. Litton Indus., Inc.*, 912 F.2d
12   291, 296 (9th Cir. 1990); *see also In re Nat'l Football Leagues Sunday Ticket*
13   *Antitrust Litig.*, No. ML 15-02668, 2017 WL 3084276 (C.D. Cal. June 30, 2017)
14   (holding that the law does not permit direct contradiction in amended pleadings);
15   *Wardrop v. Wells Fargo Bank*, No. ED CV 16-413, 2016 WL 7626145 (C.D. Cal.
16   Oct. 11, 2016) (denying leave to amend where a valid claim would require plaintiffs to
17   directly contradict present allegations).

18          For example, to establish that Yelp has monopoly power over Google's search
19   results, he would need to contradict his allegations that Google dominates the search
20   engine market; that Google controls search result rankings via its own algorithm; and
21   that users can pay Google for first-page placement among results. Compl. ¶¶ 11, 13,
22   14. And he would need to contradict his allegation that competitors can achieve top-
23   five ranking by diligently meeting Google's search criteria. Compl. ¶ 13. Moreover,
24   he cannot plausibly allege that Yelp offers the only outlet for advertising his legal
25   services business online or that charging a monthly fee for advertising is somehow
26   anticompetitive. In short, his complaint is frivolous.

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**CONCLUSION**

This Court should dismiss the complaint against Yelp with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure and enter judgment for Yelp.

DATED:  January 18, 2019

REED SMITH LLP

By: /s/ Brian A. Sutherland
     Brian A. Sutherland
     Joshua D. Anderson
     REED SMITH LLP
     101 Second Street, Suite 1800
     San Francisco, CA  94105-3659
     Telephone: (415) 543-8700
     Facsimile:  (415) 391-8269

     Attorneys for defendant Yelp Inc.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 15 –