Brian A. Sutherland (SBN 248486)
bsutherland@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: (415) 543-8700
Facsimile:  (415) 391-8269

Attorneys for Defendant Yelp Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JARON BRIGNAC, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>YELP, INC., a California Corporation, 1-10 INCLUSIVE,<br><br>Defendants. | Case No. 2:18−cv−10721 R (ASx)<br><br>**Memorandum of Law in Support of Yelp Inc.'s Motion to Transfer Venue under 28 U.S.C. § 1404(a) and Motion for an Immediate Stay Pending Decision on Transfer**<br><br>Date:     February 19, 2019<br>Time:    10:00 a.m.<br>Place:    Roybal Federal Building and U.S. Courthouse<br>              255 East Temple Street,<br>              Los Angeles, CA 90012<br>Judge:   Hon. Manuel L. Real<br><br>[filed concurrently with notice of motion and motion to transfer venue, declaration of Ian MacBean, and proposed order] |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 1

    A.    Brignac Repeatedly Manifested Assent to Yelp's Terms of Service, Which Include a Forum Selection Clause ............................................. 1

    B.    Yelp Is Headquartered in San Francisco and Its Employees Work There ........................................................................................................ 4

ARGUMENT ............................................................................................................ 4

I.    The Court Should Transfer This Case to the Northern District of California .................................................................................................... 4

    A.    This Case Could Have Been Brought in the Northern District of California .................................................................................... 5

    B.    Brignac Formed a Contract with Yelp in Which He Agreed to the Exclusive Jurisdiction and Venue of Courts in San Francisco ................ 6

    C.    The Court Should Enforce the Parties' Contract to Litigate Exclusively in Courts in San Francisco ..................................................... 7

    D.    The Convenience of the Parties and Witnesses and the Interests of Justice Also Favor Transfer to the Northern District of California .......... 8

        1.    Most of the witnesses and documents are in the Northern District ..................................................................................... 8

        2.    Transferring this case would save the parties time and expense .................................................................................. 10

        3.    Transferring this case would not prejudice Brignac .............. 10

II.   This Court Should Stay This Case Pending Its Ruling on the Motion to Transfer Venue .................................................................................... 11

CONCLUSION ....................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Atlantic Marine Const. Co., Inc. v. United States Dist. Court*,
   571 U.S. 49 (2013) ............................................................................... 4, 5, 10

*Berkowitz v. Christie's Inc.*,
   No. CV 15-1318-R, 2015 WL 12670409 (C.D. Cal. June 4, 2015) ............. 5

*CMAX, Inc. v. Hall*,
   300 F.2d 265 (9th Cir. 1962) ..................................................................... 11

*Crawford v. Beachbody, LLC*,
   No. 14-cv-1583, 2014 BL 312867 (S.D. Cal. Nov. 5, 2014) ....................... 7

*Doe 1 v. AOL LLC*,
   552 F.3d 1077 (9th Cir. 2009) ..................................................................... 7

*Fed Sav. & Loan Ins. Corp. v. Molinaro*,
   889 F.2d 899 (9th Cir. 1989) ..................................................................... 11

*Fragrance House, Inc. v. Hanjin Shipping Co.*,
   No. 2:14-CV-04565-R-PJW, 2014 WL 8708237 (C.D. Cal. Dec. 11,
   2014) ............................................................................................................ 5

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012) ......................................................... 7

*Jeung v. Yelp, Inc.*,
   No. CV 14-6223 FMO (ASX), 2015 WL 12990204 (C.D. Cal. May
   13, 2015) ............................................................................................. 6, 7, 8

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2009) ....................................................................... 8

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ................................................................................... 11

*Rodriguez v. Experian Servs. Corp.*,
   No. CV 15-3553-R, 2015 BL 490134 (C.D. Cal. Oct. 5, 2015) .................. 7

# TABLE OF AUTHORITIES
## (Cont.)

**Page**

*Rubio v. Monsanto Co.*,
   181 F. Supp. 3d 746 (C.D. Cal. 2016) ........................................................................ 8

*TradeComet.com LLC v. Google, Inc.*,
   647 F. 3d 472 (2d Cir. 2011) ...................................................................................... 9

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) .................................................................................. 8

*Wistron Corp. v. D&H Distrib. Co.*,
   No. CV 16-8609-R, 2017 WL 6017356 (C.D. Cal. Mar. 22, 2017) .......................... 5

**Statutes**

28 U.S.C. § 1391(c) .................................................................................................... 5, 6

28 U.S.C. § 1404(a) ......................................................................................................... 4

**Rules**

Fed. R. Civ. P. 45(c) .................................................................................................. 9, 10

**Other Authorities**

Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2461 (3d ed. Sept. 2018) ..................... 9

# INTRODUCTION

Plaintiff pro se Jaron Brignac repeatedly agreed to bring any claim against defendant Yelp Inc. ("Yelp") in a state or federal court located within San Francisco, California. Nevertheless, Brignac commenced this action in the Superior Court for the County of Los Angeles. Yelp removed the action to this Court and now moves to transfer venue under 28 U.S.C. § 1404. Because Brignac repeatedly agreed to Yelp's forum selection clause and because the convenience of the parties and the interests of justice favor transfer, the Court should transfer this case to the United States District Court for the Northern District of California.

# BACKGROUND

**A.  Brignac Repeatedly Manifested Assent to Yelp's Terms of Service, Which Include a Forum Selection Clause**

Yelp offers free Business Accounts to businesses, which allow them to communicate publicly or privately with consumers on Yelp's website, post information about and photos of their business, and track visits to their business's Yelp page. In order to register a Yelp Business Account on Yelp's website, the user can visit https://biz.yelp.com/signup via desktop or mobile browser or download the Yelp mobile application for business users and complete the associated registration form and electronically submit the form to Yelp. Declaration of Ian MacBean ¶ 5 & Exs. B-C.

The online registration process to establish a Business Account includes the statement: "By clicking the button below, you represent that you have authority to claim this account on behalf of this business, and agree to Yelp's Terms of Service and Privacy Policy." The "Terms of Service" text is in blue font and is hyperlinked such that when the user clicks on the text, he or she is taken to the Yelp Terms of Service agreement. The "button below" refers to a red button underneath the text that takes the user to the next step in the registration process. A user cannot proceed past the first page of the registration process unless he or she clicks on the red button.

Users who do not click on the button and complete the rest of the registration process cannot create a Business Account, claim a business listing on Yelp, or access any features available only to business users. MacBean Decl. ¶ 7 & Exs B-C.

Since at least as early as October 14, 2012, registered users (whether business or consumer users) have also had to agree to Yelp's Terms of Service each time they log into Yelp's website. MacBean Decl. ¶ 8. Specifically, on the Yelp login screen for business users, available at https://biz.yelp.com/login, and immediately next to the login button, is the following text: "By logging in you agree to Yelp's Terms of Service and Privacy Policy." The "Terms of Service" text is in blue font and is hyperlinked such that when the business user clicks on the text, he or she is taken to the Yelp Terms of Service agreement. A business user cannot access his or her Business Account, send messages to Yelp users, or contribute content such as business information or photos, unless he or she is logged into Yelp. MacBean Decl. ¶ 9 & Ex. D.

Similarly, on the Yelp login screen for consumer users, available at www.yelp.com/login, and immediately next to the login button, is the following text: "By logging in you agree to Yelp's Terms of Service and Privacy Policy." The "Terms of Service" text is in blue font and is hyperlinked such that when the user clicks on the text, he or she is taken to the Yelp Terms of Service Agreement. A user cannot post content such as reviews and photos, unless he or she is logged into Yelp. MacBean Decl. ¶¶ 6, 10 & Ex. E.

Yelp's records indicate that Brignac registered for a Yelp Business Account in February 2015, using the name Jaron Brignac and the email address bpcslaw@gmail.com. Yelp's records further indicate that Brignac registered for his Business Account through the signup page located at https://biz.yelp.com/signup via either desktop or mobile browser, and not through Yelp's mobile application for business users. Yelp records show that Brignac logged into this account as recently as January 14, 2019. MacBean Decl. ¶ 11.

– 3 –

As described above, Brignac necessarily agreed to Yelp's Terms of Service when he registered for his Business Account, and each time he logged into the account. Between the time he registered and the date of this declaration, he had used Yelp's messaging function to communicate with users of Yelp 182 times. Brignac also posted content, including descriptions of BPCS Law, its history and offerings to the Yelp business page for BPCS Law. In order to send messages to Yelp users or publish content to Yelp, Brignac necessarily registered for a Business Account with Yelp, and was logged into Yelp each time he posted content or messaged a Yelp user. MacBean Decl. ¶ 11.

Yelp's records also show that Brignac created a Yelp consumer user account on January 28, 2018 using the name Bpcs Law and the email address bpcslaw@gmail.com. Yelp's records indicate that Brignac logged into this account as recently as January 12, 2019. As described above, Brignac necessarily agreed to Yelp's Terms of Service each time he logged into the account. As of the date of this declaration, Brignac had used this account to post three reviews. To publish this content to Yelp, Brignac must have registered for an account with Yelp, and was logged into Yelp each time he posted content. MacBean Decl. ¶ 12.

The Terms of Service to which Brignac repeatedly agreed included a forum selection clause. At all times relevant here, under a bolded, capitalized heading in the Terms of Service titled "**CHOICE OF LAW AND VENUE**," this clause stated:

> FOR ANY CLAIM BROUGHT BY EITHER PARTY, YOU AGREE TO SUBMIT AND CONSENT TO THE PERSONAL AND EXCLUSIVE JURISDICTION IN, AND THE EXCLUSIVE VENUE OF, THE STATE AND FEDERAL COURTS LOCATED WITHIN SAN FRANCISCO COUNTY, CALIFORNIA.

MacBean Decl. ¶ 4 & Ex. A § 13 (emphasis in original).

### B. Yelp Is Headquartered in San Francisco and Its Employees Work There

Yelp's headquarters and principal place of business is in San Francisco, California. MacBean Decl. ¶ 13. Yelp's key management team members are based out of San Francisco, California. MacBean Decl. ¶ 14. Yelp's information related to the Brignac's claims in this action—such as communications between him and Yelp, documents concerning the operation of Yelp's search function, and documents concerning Yelp's advertising offerings—are readily accessible from its offices in San Francisco. MacBean Decl. ¶ 15. This information is not accessible to Yelp's few employees in the Central District of California. MacBean Decl. ¶ 15.

Yelp's witnesses with knowledge about communications with Brignac and the other information related to his claims as described above are in San Francisco. Such employees are not located in the Central District of California. MacBean Decl. ¶ 16. As of January 7, 2019, Yelp had approximately 6,316 employees in the United States. Approximately 2,089 of those employees were located in California, and 42 of those are remote employees located within the counties of Central District. The employees in the Central District are lower level employees involved primarily in advertising sales and marketing, and are unlikely to possess information that is directly relevant to the issues in this case, much less any information that is not accessible from Yelp's offices in San Francisco. Yelp does not have any offices in California outside of San Francisco. MacBean Decl. ¶ 17.

## ARGUMENT

### I. The Court Should Transfer This Case to the Northern District of California

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In a typical case not involve a forum-selection clause, district courts have discretion under § 1404(a) to consider both the convenience of the parties and various public factors. *See Atlantic Marine Const. Co.*,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Inc. v. United States Dist. Court*, 571 U.S. 49, 62-63 (2013). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause . . ." *Id.* at 63 (quotation marks omitted). As the United States Supreme Court held in *Atlantic Marine*: "[A] valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.*; *see Wistron Corp. v. D&H Distrib. Co.*, No. CV 16-8609-R, 2017 WL 6017356, at *2 (C.D. Cal. Mar. 22, 2017) (Real, J.) (enforcing forum selection clause); *Berkowitz v. Christie's Inc.*, No. CV 15-1318-R, 2015 WL 12670409, at *2 (C.D. Cal. June 4, 2015) (Real, J.) (same); *Fragrance House, Inc. v. Hanjin Shipping Co.*, No. 2:14-CV-04565-R-PJW, 2014 WL 8708237, at *3 (C.D. Cal. Dec. 11, 2014) (Real, J.) (same).

"[A]s the party defying the forum-selection clause, [Brignac] bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atlantic Marine*, 571 U.S. at 63. Brignac's choice of forum "merits no weight." *Id.* Moreover, because the parties agreed to litigate in the Northern District of California, the Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. And while a court may consider "public interest" factors, they will "rarely defeat" a transfer motion because, "in all but the most unusual cases, 'the interest of justice' will be served by holding parties to their bargain." *Id*. Brignac cannot carry his burden to show that this is one of the "most unusual cases" in which allowing the plaintiff to flout its contractual obligation to file in the agreed forum would serve the interest of justice.

**A.      This Case Could Have Been Brought in the Northern District of California**

A threshold question in a motion to transfer under § 1404(a) is whether the suit could have been brought in the proposed destination venue. Under 28 U.S.C. § 1391, venue is proper in any judicial district where a defendant "resides" or where a substantial part of the events giving rise to the claim occurred. A corporate defendant "resides" in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced pursuant to 28 U.S.C. § 1391(c).

Yelp maintains its principal place of business in San Francisco and is subject to personal jurisdiction there under 28 U.S.C. § 1391(c). MacBean Decl. ¶ 13. Thus, Brignac could have brought this case in the Northern District of California.

**B.  Brignac Formed a Contract with Yelp in Which He Agreed to the Exclusive Jurisdiction and Venue of Courts in San Francisco**

Brignac and Yelp formed a contract because Yelp offered Terms of Service on its website and Brignac accepted them. Brignac accepted Yelp's Terms of Service because he clicked on a button after having been notified that clicking on the button would manifest assent to Terms of Service. For example, when Brignac registered his Business Account, he visited a page that stated, "By clicking the button below, you represent that you have authority to claim this account on behalf of this business, and agree to Yelp's Terms of Service and Privacy Policy." MacBean Decl. ¶ 7 & Exs. B-C. Yelp's records prove that Brignac clicked on the button because he registered a Business Account, posted content, and used Yelp's messaging function to communicate with Yelp users, which he could not have done without registering an account and logging in to the account. MacBean Decl. ¶¶ 7-11. Similarly, Brignac registered a consumer account and manifested assent to Yelp's Terms of Service when he created and logged into that account. MacBean Decl. ¶ 12.

Courts routinely enforce online contracts that the parties form when the user clicks on a button after receiving notice that clicking on the button will manifest assent to contract. In *Jeung v. Yelp, Inc.*, for example, the Central District court held that "plaintiffs had adequate notice of and agreed to Yelp's Terms of Service, which included the relevant forum selection clause" where "the registration process included the statement: "By clicking the button below, you agree to Yelp's Terms of Service." No. CV 14-6223 FMO (ASX), 2015 WL 12990204, at *3 (C.D. Cal. May 13, 2015) (brackets omitted). This Court should, like the Central District court did in *Jeung*, grant Yelp's motion to transfer venue to the Northern District of California.

Other cases in which courts enforced online agreements include *Fteja v. Facebook, Inc.*, where the district court enforced a forum selection clause because the user clicked a "Sign Up" button near text that stated, "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service." 841 F. Supp. 2d 829, 838-40 (S.D.N.Y. 2012). Similarly, in *Rodriguez v. Experian Servs. Corp.*, this Court enforced an online agreement to compel arbitration where the defendant's website included a textual notice stating, "By clicking the button above . . . you agree to our Terms of Use." No. CV 15-3553-R, 2015 BL 490134, at *3 (C.D. Cal. Oct. 5, 2015) (Real, J.). Likewise, in *Crawford v. Beachbody, LLC*, the court enforced a forum selection clause because the user clicked a "Place Order" button near text that stated, "By clicking Place Order below, you are agreeing that you have read and understand the Beachbody Purchase Terms and Conditions, and Team Beachbody Terms and Conditions." No. 14-cv-1583, 2014 BL 312867, at *4 (S.D. Cal. Nov. 5, 2014).

As these examples indicate, a user such as Brignac manifests assent to online terms of service by clicking on a registration or login button, both of which Brignac did numerous times. MacBean Decl. ¶¶ 11-12. Moreover, a link to Yelp's Terms of Service appear on every public page of its website. MacBean Decl. ¶ 3. Brignac was a relativity frequent user with not one but two accounts—a business account and a consumer account. He plainly consented to Yelp's Terms of Service when he clicked on buttons to register these accounts, and each time he subsequently logged in to each of these Yelp accounts, as Yelp's website stated. And because he agreed to Yelp's Terms of Service, he agreed to the forum selection clause included in those Terms. *See Jeung*, 2015 WL 12990204, at *3.

**C.     The Court Should Enforce the Parties' Contract to Litigate Exclusively in Courts in San Francisco**

This Court "apply federal law to determine the enforceability of the forum selection clause." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009). "A forum selection clause is presumptively valid; the party seeking to avoid a forum selection

MEMORANDUM OF LAW
IN SUPPORT OF YELP INC.'S MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

clause bears a 'heavy burden' to establish a ground upon which [a court] will conclude the clause is unenforceable." *Id.* Here, Brignac cannot carry his burden to show that forum selection clause violates public policy or would be otherwise unenforceable. *See Jeung*, 2015 WL 12990204, at *3 (holding that Yelp's forum selection clause was valid and enforceable based on facts similar to those presented here). Accordingly, this Court should enforce the forum selection clause and grant the motion to transfer.

### D. The Convenience of the Parties and Witnesses and the Interests of Justice Also Favor Transfer to the Northern District of California

Even if the forum selection clause were somehow determined to be unreasonable or otherwise unenforceable, other relevant factors would still support transfer. In determining whether a transfer is convenient to the parties and witnesses and in the interests of justice under § 1404(a), courts consider several factors, including the convenience of the parties and witnesses, where documents are located, the availability of compulsory process to compel attendance of witnesses, and any difference in costs of litigation between the two forums, among others. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-499 (9th Cir. 2009) (listing factors).

#### 1. Most of the witnesses and documents are in the Northern District

"The convenience of witnesses is often the most important factor in determining whether a § 1404 transfer is appropriate." *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 762-63 (C.D. Cal. 2016) (citing cases). "It goes without saying that '[a]dditional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citation omitted).

Because discovery has not begun, and initial disclosures have not been made, the identity of specific Yelp witnesses remains to be determined. But all documents

– 8 –

and potential witnesses in this case (except for Brignac himself) are located in the Northern District. Yelp is headquartered in San Francisco, so its potentially relevant employees are located there and not in the Central District, including personnel that created and manage Yelp's advertising policies and search function, respectively. MacBean Decl. ¶¶ 13-17. If the case proceeded in the Central District, Yelp's witnesses would be required to travel hundreds of miles to attend trial. Furthermore, any documents potentially relevant to this case are accessible from Yelp's office in San Francisco, California, but are not accessible in the Central District, where Yelp maintains no offices and only a handful of low level employees who would not have access to the relevant documents. MacBean Decl. ¶¶ 15-17.

Moreover, the bulk of Brignac's allegations concern non-party Google, which "has its principal place of business in Mountain View, California." *TradeComet.com LLC v. Google, Inc.*, 647 F. 3d 472, 473 (2d Cir. 2011) (affirming order dismissing complaint for improper venue). According to Brignac, his "Corporation providing legal services for law firms," BPCS LAW, did not appear in Google's search results for certain keywords. Compl. ¶¶ 5-6, 11-14, 19-21. The witnesses with the most knowledge of *Google*'s proprietary search results would, of course, be non-party Google employees. To the extent that Brignac seeks to call Google's Mountain View employees as witnesses at trial, he could do so only in the Northern District of California, unless he paid the "substantial expense" of their travel to the Central District. Fed. R. Civ. P. 45(c)(1)(B)(ii); *see* Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2461 (3d ed. Sept. 2018) (Westlaw). Even assuming Brignac can pay these expenses, which seems unlikely given his request for a waiver of court fees in this case in the California court prior to removal, such travel would inconvenience the non-party witnesses just as much as it would inconvenience the party witnesses.

Because the likely party and non-party witnesses (and any relevant documents) are in Northern California, this most important factor weighs heavily in favor of transfer.

### 2. Transferring this case would save the parties time and expense

Because the non-party witnesses—Google employees and any former Yelp employees—are most likely to reside and work in the Northern District, Brignac cannot avoid the expense of travel to the Northern District. He would need to issue a subpoena to any such non-party witnesses to compel their attendance at a deposition within 100 miles of where they reside or are employed. Fed. R. Civ. P. 45(c)(1)(A). He would then need to travel to the Northern District to take any such depositions. Thus, litigating this case in the Central District would not spare him the expense of travel to the Northern District—his complaint's allegations primarily concern non-party Google, whose likely witnesses could be deposed only in the Northern District. *See id.* Moreover, as noted, Brignac could not compel the attendance of non-party witnesses at trial unless he paid their substantial expenses. Fed. R. Civ. P. 45(c)(1)(B)(ii). Thus, proceeding to trial in the Central District would likely be *more* expensive for Brignac alone, not less.

Yelp also would save time and expense by litigating in the Northern District. Its likely witnesses are in the Northern District. Thus, by litigating in the Northern District, Yelp would avoid the expense of travel to the Central District. On balance, litigation in the Northern District would save the parties time and expense, which is another reason to transfer the case.

### 3. Transferring this case would not prejudice Brignac

This case is young. The Court has not held a scheduling conference; no trial date has been set; and no party has served discovery. No risk of delay or prejudice is likely. To the extent transfer would cause a brief delay, Brignac cannot be heard to complain, given that he filed his complaint in an inconvenient venue. And even if his choice of forum were entitled to some weight (under *Atlantic Marine*, *supra*, it is not), the inconvenience that litigating in his chosen forum would cause to everyone else outweighs any weight that his choice could deserve.

## II. This Court Should Stay This Case Pending Its Ruling on the Motion to Transfer Venue

The power to stay proceedings under appropriate circumstances is part of a court's inherent authority to manage its docket. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.")

In considering whether to grant a stay, the Court should weigh competing interests that will be affected by the grant or refusal to grant a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Among these competing interests are: (1) the possible damage from the granting of a stay; (2) the hardship or inequity a party may suffer in being required to go forward; (3) the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay; (4) "the interests of the plaintiffs in proceeding expeditiously with this litigation;" and (5) "the convenience of the court in the management of its cases and the efficient use of judicial resources." *Id.* (citing *Landis*, 229 U.S. at 254–55); *Fed Sav. & Loan Ins. Corp. v. Molinaro,* 889 F.2d 899, 903 (9th Cir. 1989).

Ordering a stay of this action pending the Court's decision on the transfer motion will likely conserve judicial resources. If this Court grants the motion to transfer and at the same time considers Yelp's motion to dismiss under Rule 12(b)(6), it will have unnecessarily expended time and effort addressing the allegations of a case that would ultimately be presided over by another judge. And granting a stay would relieve the parties of having to expend substantial time preparing and responding to discovery. The transferee district court can manage discovery, if any, after transfer to that court.

Granting a stay pending the Court's decision would not prejudice Brignac. The motion to transfer venue is set for hearing on February 19, 2019. Assuming the Court

– 11 –

renders a decision shortly thereafter, Brignac will suffer no harm from a short stay of this matter.

## CONCLUSION

In accordance with the parties' agreement to litigate exclusively in courts in San Francisco and to serve the interests of the parties and witnesses and the interests of justice, this Court should transfer this action to the United States District Court for the Northern District of California under 28 U.S.C. § 1404(a).

DATED: January 22, 2019

REED SMITH LLP

By: /s/ Brian A. Sutherland
    Brian A. Sutherland
    REED SMITH LLP
    101 Second Street, Suite 1800
    San Francisco, CA 94105-3659
    Telephone: (415) 543-8700
    Facsimile: (415) 391-8269

Attorneys for defendant Yelp Inc.